STATE, ex rel. HERBERT, Atty. Genl., Plaintiff-Appellee, v. SWORD, Defendant-Appellant.

Ohio Appeals, Second District, Montgomery County.

No. 1825.   Decided May 31, 1945.

R. L. Larrimer, Columbus, Ralph Skilken, Dayton, Hon. Thomas J. Herbert (former Atty. Genl.), C. G. L. Yearick (former Asst. Atty. Genl.), Hon. Hugh S. Jenkins, Atty. Genl., and Henry Zwolinski, Asst. Atty Genl., Columbus, for plaintiff-appellee.

Paul L. Birt, Dayton, and Gus W. Byttner, Dayton, for defendant-appellant.

## OPINION

By MILLER, J.

Submitted on application for rehearing by the defendant-appellant.

The substance of the grounds for rehearing claimed is that the record does not support the finding that appellant had in his employ three or more employees at the time of the fatal accident on September 14, 1939; and also that the record does not support the finding that Rollie Jacobs was an employee on the same date.

Taking up first the proposition of the number of employees, let us look at the testimony of Frank Sword, brother of the defendant, starting on page 51 of the record:

"Q. At the time you were working with Mr. Clemens, about two weeks before his death, how many men were working for your brother? A. I don't recall just exactly. I believe there was about four."

Record, p. 52:

"Q. Could you give their names? A. Well, there was my brother, Herbert Sword, and myself and Clemens and Nichols."

Record, p. 57:

"Q. How many others were working on this job? A. He always had about four guys.

Q. Well, who were they? A. Well, my brother Herbert Sword, myself, Clemens and Nichols."

The testimony of Thomas B. Sword, p. 33:

"Q. Did your daughter keep some of the books too? A. She took care of the books for me, yes.

Q. And also answered the telephone calls? A. That's right.

Q. How old is she? A. She was twenty-three last November.

Q. Now, how many other men did you have in September of 1939, and the month of August, 1939, working? A. Well, I don't just remember. I don't think I had anybody with the exception of Clemens. I believe I had the gentleman who was in here testifying this morning. I believe he put on one job or two during the month of September. I don't just remember now."

Record, page 34:

"Q. What gentleman is that? A. The gentleman who sat

over here. I don't know him well enough to remember his name.

Q. Mr. Jacobs? A. Jacobs, yes, Rollie Jacobs. He put on three or four jobs for us. He would usually put on a job and then it would be a week or so before we would have another job for him. I think three or four jobs is what he did."

From this testimony it is seen that at least two weeks prior to September 14th Frank Sword, Herbert Sword, Clemens, Nichols and Rollie Jacobs, as well as the daughter of the defendant, were regularly employed by the defendant. To be a regular employee as contemplated by §1465-61 GC, one must be employed for work of the kind required in the business of the employer and it must be in conformity with the established scheme or system of the business. All these men, the record shows, were engaged in installing, roofing or siding which was the business of the defendant, and the daughter was engaged in keeping the books and doing the office work which is also necessary in order to conduct the business. In response to the question as to whether he was working on September 14, 1939, Rollie Jacobs answered, "I don't think so; I don't know. I know I put on jobs up at Christiansburg, I don't know the exact date on it." Again, on page 24, in response to the same question he said, "I could not say where I was working at that time".

Our Supreme Court in the case of **State, ex rel. Bettman v Christen, 128 Oh St 56,** has held that time is not controlling and that the test is not whether there were three men working at the particular instant a man was injured, but whether regularly during the business of the employer he was compelled to employ three or more employees. We do not think that an employer can be amenable to the act one day and not amenable the next. Many companies may have numerous employees working for them part of the time, and when there are no orders or on Sundays or holidays there may be only one person working in the office, for example, or as a guard or watchman. This would not mean that the one person working on the day they had no work for the other employees would not be covered by the Workmen's Compensation Act. In our original opinion, after having found that there were three employees, we did not proceed further as to any other employees of the defendant.

Coming now to the question of the status of Rollie Jacobs as to whether or not he was an employee or an independent contractor, we think that the record shows that the defendant

548

maintained at all times that all these men who were installing roofing and siding worked on the same basis and were compensated at the rate of $1.00 per square, and that these men employed their own helpers. We find also from the record that the defendant inspected and supervised the work done by these men who were doing the installing. Under such circumstances they were employees and not independent contractors.

In the case of **Industrial Commission of Ohio v Rogers, 34 Oh Ap 196,** Judge Hamilton said:

"The rule of law calls for a liberal construction of the Workmen's Compensation Law. Unless the person is clearly within the exception, the right to compensation will be upheld."

We see no reason for the sustaining of this application, and the same is therefore overruled.

HORNBECK, P. J., and GEIGER, J., concur.